UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                       )
CANDY MEI TAK LO and                                   )
CHARLES S. DE GENNARO,                                 )
                                                       )
        Plaintiffs,                                    )
                                                       )        Civil Action No.
        v.                                             )        15-cv-40165-FDS
                                                       )
JPMORGAN CHASE BANK, N.A.,                              )
                                                       )
        Defendant.                                     )
_____)

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

        This lawsuit arises out of the alleged wrongful foreclosure on a residential property

owned by plaintiff Candy Lo.  Plaintiffs Lo and Charles De Gennaro essentially allege that

defendant JPMorgan Chase, N.A. failed to abide by the terms of a loan modification agreement

and unlawfully foreclosed on the property without providing a proper accounting or an

opportunity to cure the default.  Plaintiffs are proceeding *pro se*.

        Chase has now moved to dismiss the complaint in its entirety.  For the following reasons,

the motion to dismiss will be granted in part and denied in part.

I.      **Background**

        A.      **Factual Background**

        At the time of the complaint, Candy Lo was the owner of a property located at 315

Allston Street, Unit #3 in Brighton, Massachusetts.  (Compl. ¶ 1).  At all relevant times, Lo has

resided at 19 Dixon Avenue, Worcester, Massachusetts.  (*Id.*).  Charles De Gennaro lives with

Lo at the residence in Worcester.  (*Id.* ¶ 2).

In 2002, Lo granted a mortgage on the property at 315 Allston Street to Mortgage Electronic Registration Systems ("MERS") as mortgagee.  (*Id.* ¶ 4).  In 2006, MERS assigned its interests in the mortgage to Washington Mutual Bank.  (*Id.* ¶ 5).  The mortgage was then assigned to JPMorgan Chase Bank, N.A. by the Federal Deposit Insurance Corporation, as receiver of Washington Mutual.  (Def. Mem. Ex. 2).

At some point in 2006, Lo fell behind on her mortgage payments.  (Compl. ¶ 7).  In March 2007, Lo was notified that the property would be foreclosed upon; the actual foreclosure sale, however, was postponed because Lo was in discussions with Washington Mutual to modify the loan.  (*Id.* ¶ 8).  Washington Mutual sent Lo a draft of a loan modification agreement in April 2008 (the "Draft LMA").

According to the complaint, "the [draft] loan modification was changed" after "extensive negotiations" between Washington Mutual and Lo's attorney (*Id.* ¶ 10).[1]  Among other things, the new version of the LMA reflected a lower balance due.  (*Id.* Ex. D).  The complaint alleges that on April 17, 2008, Lo signed the new LMA (the "Signed LMA"), sent it to Washington Mutual, and requested that Washington Mutual mail back a countersigned copy.  (*Id.* ¶¶ 10-12).

According to the complaint, Washington Mutual did not return an executed copy of the Signed LMA to Lo.  (*Id.* ¶ 15).  However, the complaint further alleges that Chase, through counsel, eventually e-mailed plaintiffs a countersigned copy of the agreement executed by Michelle Neal, Assistant Vice President of Washington Mutual (the "Countersigned LMA").  (*Id.* ¶ 46).  The complaint alleges that the Countersigned LMA was "altered" and was missing the section of the document that contained the "Loan Amount, Interest Rate, Duration, and

---

[1] Lo's attorney is now deceased.  (*Id.* ¶ 10).

Monthly Payments." (*Id.*).

In September 2009, Lo was again notified that the property was in foreclosure.  She and De Gennaro responded to that notice by sending a demand letter under Mass. Gen. Laws ch. 93A notifying Chase of their belief that its accounting on the loan was not in compliance with the terms of the Signed LMA.  (*Id.* ¶ 17).  In particular, the complaint alleges that an August 2008 statement showed an outstanding principal amount of $172,509.34 and a monthly payment owed of $1,154.40, instead of a principal amount of $166,952.56 and monthly payment of $1,104.94 as called for by the Signed LMA.  (*Id.* ¶ 17).  In response, Chase notified plaintiffs that it "agree[d] not to foreclose on the Property until Chase can provide a specific response to the . . . Demand Letter.  Chase's investigation of this matter is ongoing at this time."  (*Id.* ¶ 18).

The complaint asserts that Chase recommenced foreclosure proceedings in March 2013. (*Id.* ¶ 22).  Plaintiffs again responded with a Chapter 93A demand letter, which asserted that Chase had failed to provide a full accounting for the loan, had re-started foreclosure without notifying plaintiffs of the outcome of Chase's promised investigation, and requested that Chase provide a countersigned copy of the Signed LMA.  (*Id.* ¶ 23).

On October 9, 2014, Chase notified Lo that a foreclosure sale would be held on November 19, 2014.  (*Id.* ¶ 25).  That sale was postponed and rescheduled for April 17, 2015. (*Id.* ¶¶ 26-27).  Plaintiffs sent a third Chapter 93A demand letter in March 2015, reasserting the points made in their previous demand letters.  (*See id.* ¶ 28).  A fourth demand letter was sent on August 22, 2015.  (*Id.* ¶ 36).

The complaint alleges that the only accounting Chase has provided is based on terms contained in the Draft LMA.  (*Id.* ¶ 41).

Plaintiffs filed their complaint in state court on November 6, 2015.  It appears that the

property was sold at a foreclosure auction on November 10, 2015.

### B.        Procedural Background

On November 6, 2015, plaintiffs filed suit in Suffolk Superior Court, naming JPMorgan

Chase Bank, N.A. as defendant.  Following Chase's removal of the case to federal court, the

Court granted plaintiffs' emergency motion for an order endorsing a memorandum of *lis pendens*

pursuant to Mass. Gen. Laws ch. 184, § 15(b) with regard to the property that is the subject of

the case.

Chase has moved to dismiss the complaint on the grounds that (1) plaintiff De Gennaro

lacks standing to bring the complaint and (2) the complaint fails to state a claim upon which

relief can be granted.[2]

## II.        Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded

---

[2] When plaintiffs failed to file an opposition or other response, the Court issued a show-cause order on
February 16, 2016.  That order directed plaintiffs to show cause in writing within 21 days, or by March 8, 2016, why
the motion should not be granted.  After plaintiffs also failed to respond to that order, the motion to dismiss was
granted.  On motion by the plaintiffs, that dismissal was vacated by the Court on April 14, 2016.

facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted). A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

### III.     Plaintiff De Gennaro's Standing

Chase first contends that the claims of plaintiff Charles De Gennaro must be dismissed for lack of standing. Standing is a "threshold question" that must be answered before a court may consider the merits of an action. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 616 (1973). Article III of the Constitution limits the Court's jurisdiction to actual cases and controversies, and therefore requires that the plaintiff adequately allege that (1) he suffered an injury in fact to a cognizable interest, (2) "the asserted injury is causally connected" to the defendants' alleged wrongful conduct, and (3) if he succeeds in the litigation, his injury will be redressed. *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006). "In addition to these Article III prerequisites, prudential concerns ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." *Id.* (internal citations omitted). Article III standing requirements are "both plaintiff-specific and claim-specific." *Id.* at 26.

De Gennaro is not a party to the mortgage or any of the purported loan modifications. Although he lives with Lo, the two are not married and they do not live at the property at issue

here.[3]  Even when construed generously in De Gennaro's favor, the complaint does not allege

any facts suggesting that he has suffered a legally cognizable injury as a result of Chase's alleged

conduct.  Accordingly, Chase's motion to dismiss all of De Gennaro's claims for lack of

standing will therefore be granted.

## IV.    Analysis

### A.    Fraud and Deceit (Count One)

Count One of the complaint asserts a claim for common-law fraud.  To state a claim for

fraud, a plaintiff must allege that (1) the defendant made a false representation of a material fact,

(2) the defendant knew that the alleged representation was false, (3) the defendant purposefully

induced the plaintiff to rely on that representation, (4) the plaintiff relied on that representation as

being true, and (5) the plaintiff was damaged by acting on that representation.  *See Stolzoff v.*

*Waste Sys. Int'l Inc.*, 58 Mass. App. Ct. 747, 759 (2003).

The complaint identifies Chase's alleged fraudulent actions as (1) not providing a copy of

the Signed LMA that includes the loan amount, rate, term, and monthly payment; (2) not abiding

by the terms of the Signed LMA; and (3) attempting to foreclose on the property "without

knowing the exact amount of money due on the account . . . ."  (Compl. ¶ 48).  Those allegations

do not allege a specific false or fraudulent representation, and therefore cannot support a claim

for fraud.  Plaintiffs also point to Chase's representation on November 13, 2009, that "Chase

agrees not to foreclose on the Property until Chase can provide a specific response to the

misapplication of funds allegations of the Demand Letter."  (*Id.* ¶ 18).  Even assuming, as

plaintiffs allege, that Chase did not provide such a response prior to foreclosure, the complaint

---

[3] "Cohabitation in Massachusetts does not create the relationship of husband and wife in the absence of a formal solemnization of marriage, . . . [and] the incidents of the marital relationship [do not] attach to an arrangement of cohabitation."  *Collins v. Guggenheim*, 417 Mass. 615, 617 (1994); *see also Sutton v. Valois*, 66 Mass. App. Ct. 258, 262 (2006) ("Common-law marriage is not recognized in Massachusetts.").

does not adequately allege that Chase's statement was false when made, that Chase knew the statement was false, or that Chase made the statement for the purpose of inducing plaintiffs to rely on it.

Accordingly, defendant's motion to dismiss will be granted as to Count One.

### B.      Breach of Contract and "Lack of Good Faith and Fair Dealing" (Count Two)

Count Two asserts a claim for breach of the express terms of the mortgage and a claim for breach of the implied covenant of good faith and fair dealing.

#### 1.    Breach of Express Terms

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Gluckenberger v. Boston University*, 957 F. Supp. 306, 316 (D. Mass. 1997).  For the purposes of its motion to dismiss, Chase appears to concede that the mortgage and the Signed LMA were valid contracts.[4]

#### a.      The Alleged Breaches of Contract

Plaintiffs allege that Chase breached the terms of the mortgage by failing to provide plaintiffs with an accounting and right to cure prior to foreclosing on the property.  The mortgage contract can arguably be read to require Chase to provide such an accounting and right to cure. (*See* Compl. Ex. A ¶¶ 19, 22).  Although Chase contends that the complaint itself indicates that Chase did provide Lo with an accounting and a right to cure prior to the actual foreclosure, the substance of the complaint appears to allege that Chase's accounting and notice were deficient because Chase did not base its calculations on the terms of the Signed LMA.  Thus, the complaint alleges sufficient facts to support a claim for breach of the express terms of the

---

[4]  It is unclear at this stage whether the underlying contract is the original agreement, the Signed LMA, or the Countersigned LMA.

mortgage.

Although not specifically listed in Count Two, the complaint can also be read to allege that Chase has not honored the terms contained in the Signed LMA.  (*See* Compl. ¶¶ 10, 31, Ex. D).  In paragraph 1 of the Signed LMA, Washington Mutual promised to modify the original mortgage in that, "[a]s of May 1, 2008, the amount payable under the Note and the Security Instrument . . . [will be] $166,952.56."  (Compl. Ex. D, "Signed LMA" ¶ 1).  The complaint alleges that Chase failed to adjust the principal balance owed as called for in the Signed LMA. (Compl. ¶ 17).  That allegation also sufficiently pleads the existence of a valid contract that Chase breached its duties under the contract, and that plaintiffs suffered damages as a result.

### b.     Statute of Limitations Defense

Chase further contends that plaintiffs' claims for breach of contract are barred by the Massachusetts six-year statute of limitations for breach of contract actions.  *See* Mass. Gen. Laws ch. 260, § 2.  According to Chase, any breach occurred no later than October 9, 2009, when plaintiffs sent their first Chapter 93A demand letter contesting the alleged discrepancy between the principal amount shown on their mortgage statements and the amount as modified by the Signed LMA.

"The general rule in breach of contract cases is that a cause of action accrues when the contract is breached."  *Flannery v. Flannery*, 429 Mass. 55, 58 (1999).  Assuming the Signed LMA constituted a valid, enforceable contract, it called for Chase's performance—adjusting the principal balance—to be performed on May 1, 2008.  (Compl. Ex. D ¶ 1).  Chase's breach for failure to adjust the balance, therefore, occurred on May 1, 2008, when Chase's performance was due.  Accordingly, plaintiffs' claim based on that particular breach accrued on May 1, 2008. Because plaintiffs did not file suit November 6, 2015, their breach-of-contract claim based on a

breach of the express terms of the LMA is time-barred.

However, plaintiffs' claims that Chase breached the terms of the mortgage by foreclosing on the property without providing a proper accounting and right to cure did not accrue until the date of actual foreclosure.  As a result, plaintiffs' claim for breach of the express terms of the mortgage is not time-barred and therefore can survive a motion to dismiss.

### 2.  Breach of Implied Covenant of Good Faith and Fair Dealing

The complaint also alleges, although not in a separate count, that Chase's conduct breached the implied covenant of good faith and fair dealing.  "Every contract implies good faith and fair dealing between the parties to it.  The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to its fruits of the contract."  *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991)).  Put another way, the parties to a contract implicitly agree "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract."  *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993).

The basis of the breach-of-implied-covenant claim is far from clear.  Plaintiffs specifically allege that Chase breached the implied covenant by failing to conduct the foreclosure process "under paragraph 22 of the mortgage." (Compl. ¶ 52).  Standing alone, that allegation describes only a mere breach of an express term, and would not be sufficient to state a claim for breach of the implied covenant.

The complaint, however, details a series of actions and omissions that allegedly undermined Lo's ability to perform under the mortgage and Signed LMA and meet defendant's performance expectations.  In particular, it alleges that Chase foreclosed on the property using

the terms of a draft modification agreement instead of the agreed-to Signed LMA, and refused to conduct a thorough investigation into the alleged discrepancies in Chase's accounting despite plaintiffs' repeated requests.  Under the circumstances, and as an alternative theory of recovery, that is sufficiently plausible to survive a motion to dismiss.  *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 239 (1st Cir. 2013) (noting that "there may be circumstances in which an unreasonable delay in performance or sustained inattention would give rise to an implied covenant claim under Massachusetts law").

Accordingly, defendant's motion to dismiss Count Two will be granted only as to plaintiffs' allegation that Chase breached the express terms of the Signed LMA by failing to adjust the principal balance.  Chase's motion to dismiss plaintiffs' claims for breach of the express terms of the mortgage and the implied covenant of good faith will be otherwise denied.

### C.   Wrongful Foreclosure (Count Three)

Count Three asserts a claim for "wrongful foreclosure" based on Chase's "fail[ure] to provide the notice required under paragraph 22 [of the mortgage] prior to foreclosure."  Compl. ¶ 57.  In effect, Count Three is identical to the claims in Count Two for breach of contract. Therefore, Count Three will be dismissed as duplicative of plaintiffs' breach of contract claims asserted in Count Two.[5]

### D.   Intentional Infliction of Emotional Distress (Count Four)

Count Four asserts a claim for intentional infliction of emotional distress.  In Massachusetts, to state such a claim, a complaint must allege (1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was

---

[5] Alternatively, to the extent that Count Three was intended to assert a claim for wrongful foreclosure in violation of Mass. Gen. Laws ch. 244, §§ 35A and 35C, it will be dismissed for the reasons given below as to Count Six.

the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the

conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and

of a nature that no reasonable person could be expected to endure it.  *Agis v. Howard Johnson*

*Co.*, 371 Mass. 140, 144-45 (1976).

Here, the defendant's conduct, as alleged in the complaint, does not rise to the level of

"extreme and outrageous."  Conduct is "extreme and outrageous" only if it is "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community."  *Foley v. Polaroid*

*Corp.*, 400 Mass. 82, 99 (1987).  Recovery for an IIED claim generally "requires more than 'that

the defendant has acted with an intent which is tortious or even criminal, or that he has intended

to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a

degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'"

*Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Foley*, 400 Mass. at 99).

While "foreclosure is a terrible event and likely fraught with unique emotions and angst,"

foreclosures, even ones that may involve improper conduct, cannot readily be called "utterly

intolerable in a civilized community" in the absence of extreme aggravating factors.  *Moore v.*

*Mortgage Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 136 (D.N.H. 2012) (internal

citations omitted).

Because the complaint does not credibly allege conduct sufficiently extreme and

outrageous to support an IIED claim, Count Four will be dismissed.

### E.      Fair Debt Collection Practices Act (Count Five)

Count Five asserts a claim under the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692, based on an allegation that "[t]he actions of the Defendant in failing to finalize the loan

modification agreement in a timely manner affected Plaintiffs' credit in a negative manner."
(Compl. ¶ 61). Plaintiffs have not identified any particular provision of the FDCPA that they
allege has been violated. The Court will assume, without deciding, that the FDCPA applies to
the actions of banks that conduct foreclosure proceedings. However, even assuming the statute
covers Chase's conduct, Chase's alleged failure to finalize the Signed LMA does not constitute a
false or deceptive practice under the facts as alleged in the complaint. As a result, the complaint
fails to state a claim under the FDCPA.

Alternatively, based on the allegation that their credit has been affected, it may be that
plaintiffs instead intended to bring a claim under the Fair Credit Reporting Act, 16 U.S.C.
§ 1681. Under the FCRA, however, a plaintiff must bring a claim "not later than the earlier of—
(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such
liability; or (2) 5 years after the date on which the violation that is the basis for such liability
occurs." 15 U.S.C. § 1681p. Under the facts alleged in the complaint, plaintiffs discovered that
Chase had "failed to finalize" the Signed LMA no later than the date of their first demand letter
sent October 9, 2009. Accordingly, any FCRA claim based on that alleged failure was required
to have been filed no later than October 9, 2011. Because the complaint does not allege
sufficient facts to support a claim under the FDCPA, and any FCRA claim is untimely, Count
Five will be dismissed.[6]

### F.    Violation of Mass. Gen. Laws ch. 244, §§ 35A, 35B (Count Six)

Count Six of the complaint asserts a claim for "robo-signing" in violation of Mass. Gen.
Laws ch. 244, §§ 35A and 35B. Mass. Gen. Laws ch. 244, § 34A requires that "an affidavit
demonstrating compliance with this section shall be filed by the mortgagee . . . in any action or

---

[6] Notably, Lo does not allege that Chase *improperly* reported her as in default on the loan, under either version of the LMA.

proceeding to foreclose on such residential real property." Mass. Gen. Laws ch. 244, § 35A.

Section 35B similarly requires that a creditor seeking to foreclose "certify compliance with this

section in an affidavit based upon a review of the creditor's business records." Mass. Gen. Laws

ch. 244, § 35B. Chase Vice President Nicole Smiley submitted an affidavit pursuant to

Section 35B in support of Chase's attempts to foreclose on the property. (Compl. Ex. K). The

complaint alleges that Smiley's affidavit is "inaccurate and libelous." (Compl. ¶ 36(c)).

Although the complaint does not specifically allege in what ways the affidavit is incorrect, it

appears that plaintiffs challenge the accuracy of Ms. Smiley's statement that she personally

reviewed the relevant records and that "the loan records for the borrower are accurate and

reliable." (Compl. Ex. K). Plaintiffs allege that, had Smiley actually reviewed the records, she

would have known that "there were accounting issues and the account could not be reconciled

until the bank used the correct numbers." (Compl. ¶ 64).

However, even assuming plaintiffs' allegations are correct, Mass. Gen. Laws ch. § 244,

§§ 35A and 35B do not apply to the property and mortgage at issue here. Section 35A applies to

"residential real property," defined, in part, as a property that is occupied or to be occupied by

the mortgagor as a principal residence. Mass. Gen. Laws ch. § 244, § 35A(a). The statute

specifically excludes an investment property. *Id.* Section 35B likewise applies only to "certain

mortgage loan[s]," defined as mortgage loans secured by a mortgage on an owner-occupied

residential property. Mass. Gen. Laws ch. 244, § 35B. The complaint specifically alleges that

while the property foreclosed upon is located at 315 Allston Street in Brighton, Lo—the owner

of the property—maintains her principal place of residence at 19 Dixon Avenue, Worcester.

(Compl. ¶ 1). Thus, because Lo did not occupy the foreclosed property at the time of

foreclosure, she may not now bring a claim under Sections 35A and 35B. Defendant's motion to

dismiss Count Six will therefore be granted.

### G.     Violation of Mass. Gen. Laws ch. 93A (Count Seven)

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Mass. Gen. Laws ch. 93A, § 2(a).  "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'"  *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).  When read as a whole and construed liberally, the complaint alleges facts indicating that Chase acted unfairly and deceptively by refusing to honor the terms of the Signed LMA and proceeding with foreclosure even though it was unable to produce a full copy of the controlling loan modification agreement or provide a proper accounting based on that agreement.

Still, a claim under Chapter 93A must be brought within four years of the accrual of the cause of action.  Mass. Gen. Laws ch. 260, § 5A; *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 404 (2003).  Generally, accrual occurs at the time of the allegedly unlawful conduct.  However, Massachusetts courts apply a discovery rule, under which the accrual of a cause of action is delayed until "an event or events have occurred that were reasonably likely to put plaintiff on notice that someone may have caused her injury." *Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 28 (1st Cir. 1993); *see also Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 207 (1990); *Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 126 (2007) (holding that the discovery rule applies to Chapter 93A claims).

Here, like plaintiffs' other claims, the basis for plaintiffs' Chapter 93A claim is Chase's alleged failure to follow the terms of the Signed LMA and its subsequent foreclosure of the

property.  The complaint alleges Lo submitted the Signed LMA on April 17, 2008, and that Lo received Chase's first notice of foreclosure in September 2009.  (Compl. ¶¶ 11, 16).  Following that notice, Lo sent Chase a Chapter 93A demand letter on October 9, 2009.  (*Id.* ¶ 19).  Thus, there can be no dispute that Lo was on notice of the facts underlying her Chapter 93A claim no later than the day of her first demand letter.  Thus, any claim arising out of those facts would have become time-barred on October 9, 2013.  Because plaintiffs did not file their complaint until November 6, 2015, their claim under Chapter 93A will therefore be dismissed.

### H.    **Declaratory Judgment (Count Eight)**

Count Eight asserts what appears to be a claim for a declaratory judgment that "there is no Note and the Mortgage is invalid."  (Compl. ¶ 78).  In effect, plaintiffs contend that because the version of the Signed LMA provided by the bank to plaintiffs does not show the loan principal amount, rate, term, or the amount of monthly payments, there is no loan at all.  The fact that Chase's version of the Signed LMA is missing certain terms does not, however, lead to the conclusion that those terms simply do not exist.  That is to say, just because Chase's copy of the Signed LMA does not show the loan amount, that does not mean the amount is therefore "$0."

Alternatively, the facts as alleged in the complaint do not plausibly allege the possibility that Chase agreed to a loan modification in which the principal balance, interest rate, and required monthly payments were all set at "0."  Without passing judgment on the merits of its allegations, the complaint can be read to infer that one of three agreements between the parties controls the dispute:  the original mortgage, the Draft LMA (as it appeared before Lo edited it), or the Signed LMA (as submitted by Lo).  Regardless of which agreement ultimately controls, there is no plausible possibility that the relevant loan balance is zero.  Plaintiffs' claim in Count Eight for a declaration that there is no money owed on the mortgage will therefore be dismissed.

I.      **Permanent Injunction (Count Nine)**

Count Nine of the complaint requests a permanent injunction enjoining Chase from proceeding with the foreclosure sale.  Chase contends that a foreclosure sale has already taken place, and thus plaintiffs' request for an injunction is moot.  Plaintiffs do not dispute that the sale has taken place, and have not opposed Chase's motion to dismiss with respect to their request for an injunction.  Accordingly, Count Nine will therefore be dismissed.

J.      **Plaintiff's Request for Leave to Amend**

At the conclusion of her opposition memorandum, Lo requests leave to amend the complaint to bring additional claims arising out of the foreclosure sale on November 10, 2015.  If plaintiff desires to add new claims, she must file a separate motion for leave to amend the complaint with the proposed amended complaint attached as an exhibit, and defendant will have an opportunity to respond.

IV.     **Conclusion**

Based on the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part.  Specifically,

1.      Defendant's motion to dismiss plaintiff Charles De Gennaro for lack of standing is GRANTED.

2.      Defendant's motion to dismiss Counts One, Three, Four, Five, Six, Seven, Eight, and Nine is GRANTED.

3.      Defendant's motion to dismiss Count Two is DENIED.

**So Ordered.**


                                        /s/  F. Dennis Saylor
                                        F. Dennis Saylor IV
Dated:  May 24, 2016                     United States District Judge