**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **CANDY MEI TAK LO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **15-cv-40165-FDS** |
| | ) | |
| **JPMORGAN CHASE BANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____)

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S**
**MOTION TO VACATE THE FORECLOSURE SALE**

**SAYLOR, J.**

This lawsuit arises out of the alleged wrongful foreclosure on a rental property—not a

primary residence—owned by *pro se* plaintiff Candy Mei Tak Lo.  Lo executed a note in 2002

and granted a mortgage on her property as security for the note.  The mortgage was initially

assigned to Washington Mutual Bank ("WaMu").  After Lo defaulted in 2006, she entered into a

loan modification agreement ("LMA") with WaMu in April 2008.  Later, the loan was acquired

by defendant JPMorgan Chase, N.A. ("Chase").  Lo then made seven more payments under the

LMA before defaulting again in November 2008.  Because she did not make any more payments

after that date, Chase foreclosed on her property in November 2015.

The amended complaint alleges that Chase, as WaMu's successor, failed to abide by the

terms of the mortgage and unlawfully foreclosed on the property without providing a proper

accounting or an opportunity to cure the default.  Chase has moved for summary judgment, and

Lo has moved to vacate the November 2015 foreclosure sale.  For the following reasons, the

motion for summary judgment will be granted, and the motion to vacate the foreclosure sale will

be denied.

## I. Background

### A. Factual Background

The following facts are as set forth in the record.

Candy Mei Tak Lo owned the property located at 315 Allston Street, Unit #3 in Brighton, Massachusetts (the "property"). (Compl. ¶ 1).[1] She did not reside there, instead living at 19 Dixon Avenue, Worcester, Massachusetts, with her fiancé, Charles De Gennaro. (*Id.* ¶¶ 1-2).

On October 22, 2002, Lo executed a note in the amount of $152,000 in favor of First Alliance Bank. (Def. Ex. A; Grageda Aff. ¶ 2). She granted a mortgage on the property at 315 Allston Street to Mortgage Electronic Registration Systems ("MERS") as security for the note. (Def. Ex. B; Grageda Aff. ¶ 3).

After making a payment on May 16, 2006, Lo defaulted on her mortgage. (Def. Ex. E; Lo Dep. at 53-55). Lo did not make a single payment on her mortgage between May 16, 2006, and April 22, 2008, a period of approximately two years. (*Id.*).

On September 13, 2006, MERS assigned its interest in the mortgage to WaMu. (Def. Ex. C; Grageda Aff. ¶ 4).

Lo eventually began working with WaMu on a LMA. (Lo Dep. at 56-57). On April 1, 2008, WaMu sent Lo a proposed LMA. (Def. Ex. J). The proposed LMA stated that Lo owed $173,519.81 in principal on the note, corresponding to monthly payments of $1,154.40. (*Id.*). On April 17, 2008, Lo executed a final version of the LMA, which was countersigned by WaMu Assistant Vice President Michelle Neal. (Def. Ex. K). The countersigned version provided by Chase does not state the amount Lo owed. Lo's version of the LMA that she signed showed that

---

[1] The amended complaint does not include a statement of facts. Rather, it refers back to factual allegations set forth in the original complaint.

she owed $166,952.56, corresponding to monthly payments of $1,104.95, but these numbers do not appear in any bank documents.  (Docket No. 7 at 81-83).  In correspondence, Lo requested that WaMu mail back a countersigned copy of the document she signed.  (*Id.* at 86-87).  Regardless of the claimed discrepancy, the parties agree that they entered into the LMA in April 2008 and that it is a binding contract.

On August 15, 2008, Lo received a loan statement from WaMu showing an outstanding balance of $172,509.34, corresponding to monthly payments of $1,154.40.  (*Id.* at 94).  On September 27, 2008, Lo and De Gennaro sent another letter to WaMu requesting a countersigned copy of the LMA that Lo executed.  (*Id.* at 89).  Between April 22, 2008 and November 14, 2008, Lo made seven payments, apparently pursuant to the LMA.  (Def. Ex. E; Lo Dep. at 66-67).[2]

Since November 14, 2008, Lo has not made any payments on the loan.  (Def. Ex. E; Lo Dep. at 70-72).  Between 2006 and late 2016, Lo was employed and earned income, and was able to rely on De Gennaro for financial support.  (Lo Dep. at 25-44).  In addition, Lo rented out the property between 2006 and 2015, collecting approximatively $1,500 per month in rent.  (*Id.* at 91-92).

On December 16, 2008, WaMu sent Lo a 90-day right-to-cure notice to both her Worcester and Brighton addresses (Grageda Aff. ¶¶ 9-10; Def. Exs. H, I).  Lo received both these letters.  (Lo Dep. at 115).

On October 9, 2009, Lo and De Gennaro responded to a notice of foreclosure scheduled for October 15, 2009, by sending a Chapter 93A demand letter.  (Docket No. 7 at 91-93).  The demand letter claimed that WaMu's accounting was incorrect and that Chase, as WaMu's

---

[2] The payments were made on April 22, June 11, July 15, August 15, September 12, October 15, and November 14, 2008.  (Def. Ex. E).  The amounts varied between $1,104.94 and $1,300.

successor, was not adhering to the terms of the LMA. (*Id.*).[3] In particular, the letter noted that the August 2008 statement showed a higher balance due than the April 2008 LMA Lo executed. (*Id.*). In response, on November 13, 2009, Chase denied all liability, but offered as a settlement offer that it would "agree[] not to foreclose on the Property until Chase [could] provide a specific response to the . . . Demand Letter." (*Id.* at 97-98). Lo never responded to the offer of settlement. (Lo Dep. at 75-77).

On November 16, 2012, the FDIC, as receiver of WaMu, assigned the mortgage to Chase. (Def. Ex. D; Grageda Aff. ¶ 5).

In early 2013, Lo was given notice that Chase had scheduled another foreclosure action on the property. (Docket No. 7 at 104-06). Lo and De Gennaro responded with another Chapter 93A demand letter, asserting that Chase had failed to provide a full accounting for the loan and improperly restarted foreclosure proceedings. (*Id.*).

On August 18, 2014, Nicole Smiley, a Vice President at Chase, filed an affidavit stating that she had reviewed Chase's business records and that Lo had received notice of her right to cure pursuant to Mass. Gen. Laws ch. 244 § 35A prior to August 3, 2012. (*Id.* at 108-09). She further certified that the loan records were accurate, and that Chase was authorized to conduct a foreclosure sale. (*Id.*).

On October 9, 2014, Chase notified Lo that a foreclosure sale would be held on November 19, 2014. (Compl. ¶ 25). That sale was postponed and rescheduled for April 17, 2015. (*Id.* ¶¶ 26-27). Lo and De Gennaro sent a third Chapter 93A demand letter in March 2015, reasserting the points made in their previous demand letters. (Docket No. 7 at 112-15).

---

[3] On September 25, 2008, Chase acquired WaMu's banking operations. *See JPMorgan Chase Acquires Banking Operations of Washington Mutual*, FDIC, *available at* https://www.fdic.gov/news/news/press/2008/pr08085.html.

On May 14, 2015, Chase sent Lo a payoff quote for the loan. (Def. Ex. F). On May 27, 2015, Chase's prior counsel Daniel Sonneborn sent a letter to Lo enclosing a copy of her payment history from November 20, 2002, through May 27, 2015, and confirmed that Chase had agreed to postpone the April 17, 2017 foreclosure, in view of a potential settlement. (Sonneborn Aff. ¶ 2; Sonneborn Aff. Ex. A). In the letter, Sonneborn stated that Chase was offering to reevaluate Lo for a permanent loan modification or other loss mitigation program. (Sonneborn Aff. Ex. A). According to the terms of the letter, the offer expired on July 1, 2015. Lo did not accept the offer.

Lo and De Gennaro sent a fourth Chapter 93A demand letter to Chase on August 24, 2015. (Docket No. 7 at 149-54). On August 28, 2015, Sonneborn sent an e-mail to Lo and De Gennaro again stating Chase's position. (*Id.* at 156-58). Sonneborn further stated that because Lo had failed to submit an application for a loan modification, Chase would proceed with a foreclosure sale on September 9, 2015. (*Id.*).

On September 1, 2015, Sonneborn e-mailed a copy of the May 14, 2015 payoff quote from Chase concerning the loan. (Sonneborn Aff. ¶ 3; Sonneborn Aff. Ex. B). On September 3, 2015, Sonneborn e-mailed copies of the two 90-day right-to-cure notices that WaMu had mailed to Lo on December 16, 2008. (Sonneborn Aff. ¶ 5; Sonneborn Aff. Ex. D). On October 6, 2015, Sonneborn also e-mailed the LMA from 2008. (Docket No. 7 at 182-91). Lo contends that certain parts have been redacted.

On November 10, 2015, Chase conducted a foreclosure sale on the property. (Buchholz Aff.). De Gennaro was the highest bidder at the auction, and the house was sold to him for $286,000. However, he failed to perform under the terms of the memorandum of sale. (*Id.*). The property was offered to the second highest bidder, who declined to accept. (*Id.*). Therefore,

pursuant to the memorandum of terms and conditions of sale, Chase bought the property for

$285,000, and subsequently assigned its bid to the Federal National Mortgage Association.

(Buchholz Aff. Ex. B).

On August 29, 2016, Lo sent another Chapter 93A demand letter to Chase.  (Am. Compl.

¶ 12).

### B.        Procedural Background

On November 6, 2015, Lo and De Gennaro filed this suit in Suffolk Superior Court.

Chase timely removed the action to this Court on December 4, 2015. On January 6, 2016, the

Court executed a memorandum of *lis pendens*, which Lo recorded in the Suffolk County

Registry of Deeds on February 2, 2016.  (Def Ex. O).

 On January 20, 2016, Chase moved to dismiss the complaint on the grounds that (1) De

Gennaro lacked standing and (2) the complaint failed to state a claim upon which relief can be

granted.  On May 24, 2016, the Court granted Chase's motion to dismiss plaintiff De Gennaro

for lack of standing.  The Court also dismissed all counts in the complaint except for Count Two,

which was a claim for breach of contract and violation of the implied covenant of good faith and

fair dealing.  The litigation was then stayed between January 23, 2017, and September 6, 2017,

as the parties attempted to negotiate a settlement.

On October 11, 2017, the Court granted in part Lo's motion to amend the complaint,

allowing her to assert three claims.  Counts 1 and 3 of the amended complaint assert claims for

breach of contract and violation of the implied covenant of good faith and fair dealing, and

Count 2 is a claim for violation of the Massachusetts consumer protection statute, Mass. Gen.

Laws ch. 93A.  Chase has now moved for summary judgment as to all counts.  Lo has opposed

that motion and moved to vacate the November 2015 foreclosure sale.

## II.   Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).

Summary judgment is appropriate when the moving party shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence,

viewed in the light most flattering to the nonmovant, would permit a rational fact finder to

resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896

F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court

indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*,

994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is

made, the adverse party must set forth specific facts showing that there is a genuine issue for

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The

nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but

instead must "present affirmative evidence." *Id.* at 256-57.

## III.   Analysis

### A.   Count 1—Breach of Contract and "Lack of Good Faith and Fair Dealing" as to the Mortgage

Count 1 asserts both a claim for breach of the express terms of the mortgage and a claim

for breach of the implied covenant of good faith and fair dealing. It essentially alleges that

Chase breached the terms of the mortgage by failing to provide Lo an accounting and right to

cure prior to foreclosing on the property. (Am. Compl. ¶ 10; Compl. ¶¶ 49-52).

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege,

at minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Gluckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997). The formation of a contract requires the manifestation of mutual assent by the parties to the agreement, which in the most traditional method involves an offer by one of the parties and an acceptance of that offer by the other. *Trifiro v. New York Life Ins. Co.,* 845 F.2d 30, 31-32 (1st Cir. 1988); Restatement (Second) of Contracts § 17 (1981).

The doctrine of good faith and fair dealing "concerns the manner in which existing contractual duties are performed," not the lawfulness of the agreement itself. *Bohne v. Computer Assocs. Int'l Inc.*, 514 F.3d 141, 143 (1st Cir. 2008). "It constrains a party's discretion so that 'the objectives of the contract [are] realized,' but does not 'create rights and duties not otherwise provided for.'" *Id.* (quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.,* 441 Mass. 376, 385 (2004)). "The concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 238 (1st Cir. 2013) (quoting *Ayash v. Dana-Farber Cancer Inst.,* 443 Mass. 367, 386 (2005)).

It is clear that Lo, not Chase, breached the terms of the mortgage. The parties do not dispute that Lo executed a note and mortgaged her property, and that Chase is the correct mortgagee. Under the terms and conditions of the mortgage, Lo was required to "pay when due the principal of, and interest on, the debt evidenced by the note, and any prepayment charges and late charges due under the Note." (Def. Ex. B at 5). Lo admits that she has not made any payments on the mortgage since November 2008, despite having the financial resources

necessary to make such payments. (Lo Dep. at 70-74).

Although Chase was required to provide a notice of right to cure default, such notices were sent by WaMu to Lo at both of her addresses in December 2008. (Grageda Aff. ¶¶ 9-10; Def. Exs. H, I). Lo also contends that Chase failed to provide an accounting of the loan prior to foreclosure. However, the record shows that Chase provided a payoff quote for the loan on May 14, 2015, and provided copies of Lo's payment history from November 20, 2002, through May 27, 2015. (Def. Ex. F; Sonneborn Aff. Exs. B, D). Notably, the payoff quote contained a detailed accounting of the loan, including the unpaid principal balance, interest from date of default, escrow advance balance, late charges, corporate advances, and current and estimated attorney's fees and costs. (Def. Ex. F).

Lo appears to suggest that, alternatively, she has a claim for promissory estoppel. In support, she points to Chase's alleged misquoting of the correct balance due in August 2008 and Chase's November 2009 response to her Chapter 93A demand letter offering to refrain from foreclosing on the property pending further investigation. In order to establish a claim of promissory estoppel under Massachusetts law, a plaintiff must allege that (1) a promisor made a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only be enforcement of the promise. *Neuhoff v. Marvin Lumber and Cedar Co.*, 370 F.3d 197, 203 (1st Cir. 2004).

Lo never accepted Chase's offer in the November 2009 response letter. And even if Chase had misquoted the correct balance due under the LMA, that did not discharge Lo from her duty to make mortgage payments, as it is undisputed that the LMA constituted a valid contract between the parties. *See DiCarlo-Fagioli v. JP Morgan Chase Bank, N.A.,* 2015 WL 6159057,

at *3 (D.N.H. Oct. 20, 2015) ("[M]aking payments on a mortgage, modified or not, is not detrimental reliance because [mortgagors are] required to make mortgage payments to avoid foreclosure."). Therefore, by failing to make payments of any kind for seven years, Lo breached the express terms of the contract, and Chase was entitled to foreclose on the property.[4]

Lo's reliance on *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226 (2015) is similarly unavailing. In *Pinti*, the SJC held that a mortgagee is required to conduct foreclosure sales in strict compliance with the mortgage's provisions regarding notice of default. *Id.* at 231-32. The SJC further held that a mortgagee's failure to comply strictly with those notice provisions would render a foreclosure sale void. *Id.* at 240-41. Here, the Court has already found that Chase fully complied with the mortgage's terms governing notice of default. Nevertheless, even if Chase had only substantially complied with the mortgage's terms, the SJC limited *Pinti* to prospective foreclosures, stating, "it is appropriate to give [this] decision prospective effect only: it will apply to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after the date of this opinion." *Id.* at 243; *see also Fed. Nat'l Mortg. Assoc. v. Marroquin*, 477 Mass. 82, 87-88 (2017) (holding that *Pinti* would also apply to cases pending on appeal at the Appeals Court, provided the issue had been raised and preserved before *Pinti* was decided).[5] Here, Lo was provided notices of her right to cure default in December 2008, nearly seven years before *Pinti* was decided. The present case was not filed until November 2015, four months after *Pinti*. *Pinti* is therefore inapplicable.

---

[4] In addition, the Court already dismissed plaintiff's claim for breach of the LMA contract as time-barred. *See* Docket No. 32 at 7-10.

[5] Paragraph 22 in the mortgage at issue in *Pinti* included an acceleration clause and provided the mortgagee remedies, including the power of foreclosure, in case of default. *Pinti*, 472 Mass. at 228 n.6.

Accordingly, the motion for summary judgment will be granted as to Count One.

**B.      Count Two—Violation of Mass. Gen. Laws ch. 93A**

Count Two alleges that Chase engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A by foreclosing on the property without "providing a right to cure the note using the correct financial numbers as was delineated in the Signed Loan Modification of April 2001 [sic]." (Am. Compl. ¶ 12).[6]

"Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)). In addition, the plaintiff must show "an injury or loss" and a "causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Gorbey ex rel. Maddox v. Am. Journal of Obstetrics and Gynecology*, 849 F. Supp. 2d 162, 165 (D. Mass. 2012). A claim under Chapter 93A must be brought within four years of the accrual of the cause of action. Mass. Gen. Laws ch. 260, § 5A; *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 404 (2003).

As set forth above, Chase fully complied with the terms of the mortgage and did not commit any "unfair or deceptive" acts. In addition, this claim is essentially identical to the Chapter 93A claim concerning the April 2008 LMA, which the Court already dismissed as time-barred. *See* Docket No. 32 at 14. Therefore, the motion for summary judgment will be granted as to Count Two.

**C.      Count Three—Breach of Contract as to Chase's Response to Plaintiff's First Chapter 93A Demand Letter**

Finally, in Count Three, Lo contends that Chase entered into a binding contract with her

---

[6] It appears Lo was referring to the April 2008 LMA.

11

Accordingly, the motion for summary judgment will be granted as to Count One.

**B.      Count Two—Violation of Mass. Gen. Laws ch. 93A**

Count Two alleges that Chase engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A by foreclosing on the property without "providing a right to cure the note using the correct financial numbers as was delineated in the Signed Loan Modification of April 2001 [sic]." (Am. Compl. ¶ 12).[6]

"Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)). In addition, the plaintiff must show "an injury or loss" and a "causal connection between the defendant's deceptive act or practice and the plaintiff's injury." *Gorbey ex rel. Maddox v. Am. Journal of Obstetrics and Gynecology*, 849 F. Supp. 2d 162, 165 (D. Mass. 2012). A claim under Chapter 93A must be brought within four years of the accrual of the cause of action. Mass. Gen. Laws ch. 260, § 5A; *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 404 (2003).

As set forth above, Chase fully complied with the terms of the mortgage and did not commit any "unfair or deceptive" acts. In addition, this claim is essentially identical to the Chapter 93A claim concerning the April 2008 LMA, which the Court already dismissed as time-barred. *See* Docket No. 32 at 14. Therefore, the motion for summary judgment will be granted as to Count Two.

**C.      Count Three—Breach of Contract as to Chase's Response to Plaintiff's First Chapter 93A Demand Letter**

Finally, in Count Three, Lo contends that Chase entered into a binding contract with her

---

[6] It appears Lo was referring to the April 2008 LMA.

through its November 13, 2009 response to her Chapter 93A demand letter.  In the letter, Chase

denied all liability but made a settlement offer.  Under the terms of the offer, Chase would

"agree[] not to foreclose on the Property until Chase can provide a specific response to the

misapplication of funds allegations of the Demand Letter.  Chase's investigation of this matter is

ongoing at this time."  (Docket No. 7 at 98).

Again, contract formation typically involves an offer by one party and acceptance of that

offer by the other party.  *Trifiro,* 845 F.2d at 31-32.  It is clear that the November 13, 2009 letter

constituted an offer of settlement from Chase.  However, Lo testified that she never responded to

that letter, and never otherwise executed a contract or settlement agreement with WaMu or

Chase.  (Lo Dep. at 75-77).  Because there was no acceptance, Chase's letter cannot be

considered a contract between the parties.  Accordingly, the motion for summary judgment will

be granted as to Count Three.

## IV.     **Memorandum of *Lis Pendens***

The Court has granted defendant's motion for summary judgment on all counts;

accordingly, the memorandum of *lis pendens* will be dissolved.

## V.     **Motion to Vacate the Foreclosure Sale**

As set forth above, the Court finds that Lo defaulted on the note and that Chase complied

with all procedural requirements under the terms of the mortgage.  Therefore, the November

2015 foreclosure sale was proper, and plaintiff's motion to vacate the sale will be denied.

## VI.     **Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

This Court's earlier memorandum of *lis pendens* is hereby DISSOLVED.  Plaintiff's motion to

vacate the November 2015 foreclosure sale is DENIED.

**So Ordered.**

                                        /s/  F. Dennis Saylor
                                        F. Dennis Saylor IV
Dated:  July 10, 2018                   United States District Judge